**THORNTOWN TELEPHONE COMPANY, INC.,**
Petitioner,

v.

**STATE BOARD OF TAX COMMISSION-ERS, C. Kurt Zorn, Chairman, Gordon E. McIntyre, Member, Wanda K. Watts, Member, Respondents.**

**TRI–COUNTY TELEPHONE COMPANY, INC. Petitioner,**

v.

**STATE BOARD OF TAX COMMISSION-ERS, C. Kurt Zorn, Chairman, Gordon E. McIntyre, Member, Wanda K. Watts, Member, Respondents.**

Nos. 49T10–9210–TA–00083, 49T10–9210–TA–00082.

Tax Court of Indiana.

Feb. 25, 1994.

Daniel P. Byron and Jeffrey T. Bennett, McHale, Cook & Welch, P.C., Indianapolis, for petitioners.

Pamela Carter, Atty. Gen. of Indiana, Joel Schiff and Marilyn S. Meighen, Deputy Attys. Gen., Indianapolis, for respondents.

FISHER, Judge.

Thorntown Telephone Company, Inc. and Tri–County Telephone Company, Inc. (the Companies) appeal the State Board of Tax Commissioners' (the State Board) final determination denying an adjustment for economic obsolescence on their distributable property for 1990.

## ISSUE

Whether the State Board must apply an adjustment for economic obsolescence in the assessment of the Companies' property.

## FACTS AND PROCEDURAL HISTORY

The Companies are public utilities that do business and own distributable property in Indiana. This court first addressed the assessment of the Companies' property in *Thorntown Telephone Co. v. State Board of Tax Commissioners* (1992), Ind.Tax, 588 N.E.2d 613 (*Thorntown I*), and stated the following facts:

> Within the general framework for determining unit value under 50 I.A.C. 5–4–2, the State Board's methods of assessment vary among the different classes of public utility companies. In 1989, the State Board incorporated an economic obsolescence adjustment in its method of assessing railroad property.... During 1990, the year at issue, the State Board exclusively applied the schedule to the assessment of railroad property.
>
> Notwithstanding, when Thorntown and Tri–County provided the State Board with information for their 1990 assessments, they ... requested adjustments for economic obsolescence calculated according to the [railroad] schedule.
>
> On June 1, 1990, the State Board issued tentative assessments of Thorntown's and Tri–County's property, without the requested adjustments for economic obsolescence. Thorntown and Tri–County objected, and the State Board held a hearing on the matter on June 27, 1990. On June 29, 1990, the State Board issued orders making Thorntown's and Tri–County's tentative assessments final.

*Id.* at 615–16. The court held the State Board was not required to apply the economic obsolescence adjustments calculated for railroad property to telephone property. *Id.* at 617. Nevertheless, the court remanded the case to the State Board to "consider the issue of whether adjustments for economic obsolescence are necessary ... in arriving at just valuations of Thorntown's and Tri–County's property ..." *Id.* at 620.

On remand, the State Board again denied the adjustments, stating the Companies had

not identified any property that required adjustments for economic obsolescence. The Companies now appeal. Additional facts will be introduced as necessary.

## STANDARD OF REVIEW

■ When the court reviews a State Board assessment of public utility property, its standard of review is set by statute:

When a public utility company initiates an appeal under section 30 of [IND.CODE 6–1.1–8], the tax court may set aside the state board of tax commissioners' final assessment and refer the matter to the board with instructions to make another assessment if:

(1) the company shows that the board's final assessment, or the board's apportionment and distribution of the final assessment, is clearly incorrect because the board violated the law or committed fraud; or

(2) the company shows that the board's final assessment is not supported by substantial evidence.

IND.CODE 6–1.1–8–32. "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 568 N.E.2d 1116, 1122 (quoting *State Bd. of Tax Comm'rs v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723, 731).

## DISCUSSION AND DECISION

■ In *Thorntown I,* the court stated: 'Economic obsolescence is loss in value resulting from external economic factors such as decreased demand, governmental restrictions and social changes. A deduction should be made for economic obsolescence to reflect depressed earning capacity and other economic factors affecting the value of property.'

*Thorntown I,* 588 N.E.2d at 617 (quoting J. Amdur, *Property Taxation of Regulated Industries,* 40 TAX LAWYER 339, 360 (1987) (footnotes omitted)). *See also* 50 I.A.C. 2.1–5–1. Obsolescence, expressed as a percentage reduction, is applied to the value of the property after physical depreciation has been taken into account.[1] *Id.*

■ "Like any other party appealing an administrative decision, the taxpayer bears the burden to show the State Board's assessment was inaccurate." *Paul Heuring Motors, Inc. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 620 N.E.2d 39, 41 (citing *Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 911, 913). Thus, the Companies must present a prima facie case. "A 'prima facie case' is one which presents 'such evidence as is sufficient to establish a given fact and which if not contradicted will remain sufficient.'" *Plough v. Farmers State Bank of Henry County* (1982), Ind.App., 437 N.E.2d 471, 475 (citing *Rene's Restaurant Corp. v. Fro–Du–Co Corp.* (1965), 137 Ind.App. 559, 564, 210 N.E.2d 385; *Floyd v. Jay County Rural Elec. Membership Corp.* (1980), Ind.App., 405 N.E.2d 630). Consequently, the Companies submitted various studies on remand to support their argument that economic obsolescence adjustments were necessary. More specifically, each Company submitted studies and statistics on costs of reproduction less depreciation,[2] capitalization of income,[3] as well as "Blue Chip" studies which had been prepared by General Telephone (GTE).[4] The court

1. "The calculation of True Tax Value can be illustrated as: REPRODUCTION COST − PHYSICAL DEPRECIATION = VALUE [and] VALUE − OBSOLESCENCE DEPRECIATION = TRUE TAX VALUE." *Id.*

2. The Companies' Cost of Reproduction studies purport to index the properties' respective costs from the year of acquisition to the current year. These costs, known as "reproduction costs new," were then compared to the properties' book costs, resulting in multipliers for each company. The multipliers were applied to the reserve, and

accumulated depreciation was then subtracted from the indexed cost. *Transcript* at 25–28.

3. The Capitalization of Income studies value property by dividing the income of each company (over a five year term) by a capitalized rate. The capitalization rate is an average of yields on public utility bonds from sixteen selected telephone companies. *Transcript* at 24–25; 28–29.

4. The "Blue Chip" studies purport to compare company data and efficiency factors to industry standards. These studies were modeled after the

recognized these factors as methods of quantifying economic obsolescence in *Thorntown I*, 588 N.E.2d at 619, n. 11 (citing IND. CODE 6–1.1–8–26(b)).

Although the Companies' burden of proof does not shift, the duty of going forward with evidence may shift several times. *See Scott v. Sisco* (1959), 129 Ind.App. 364, 377, 156 N.E.2d 895, 901. Thus, it was incumbent upon the State Board to rebut the Companies' evidence. The State Board did not. Instead, in its final determination after remand, the State Board refused to consider the Companies' studies because they resulted in "wide-spread and unexplained differences." *Respondent's Brief* at 14. The State Board also concluded the "Blue Chip" studies were unverified and compiled by an "interested" party.[5]

The court recognizes that the State Board may consider many factors in determining unit value of a public utility, including:

(6) statistics and reports prepared or filed by the company;

(7) statistics and reports prepared by another governmental agency or by a private organization if the organization is considered reliable by investors and investment dealers;

.  .  .  .  .

IC 6–1.1–8–26(b). The court also recognizes that the State Board has the discretion to reject submitted statistics and reports if they are unreliable. Here, the State Board argues that because the "Blue Chip" studies were prepared by an interested party, they were unreliable, and therefore did not fall within the scope of IC 6–1.1–8–26(b)(7). The studies do fall, however, within the purview of IC 6–1.1–8–26(b)(6). Regardless which subsection is proper, the State Board cannot refuse to consider the studies merely because they were prepared by an interested party. Rather, the State Board must give some explanation or make some showing that the studies are indeed unreliable. Unsupported conclusions or findings are insufficient to contradict a prima facie case. *See Mahan v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 622 N.E.2d 1058, 1061 (final determinations unsupported by substantial evidence will be reversed).

The State Board also contends, as it did in *Thorntown I*, that it uses an accelerated federal tax depreciation method to assess telephone companies. Accordingly, the State Board asserts "the method of depreciation used by telephone companies adequately reflects losses in the value of property from economic obsolescence and, therefore, that an adjustment for economic obsolescence is unnecessary in determining the unit value of telephone companies." *Thorntown I*, 588 N.E.2d at 619. The court rejected this argument in *Thorntown I* because the "State Board ma[de] no finding, nor [did] the record contain any evidence, that the method of depreciation used by telephone companies adequately account[ed] for losses in the value of ... Thorntown's and Tri–County's property from economic obsolescence." *Id.* Therefore, to succeed with this argument the second time, the State Board must supply the court with the necessary findings and evidence that the accelerated federal tax depreciation method actually does account for losses due to economic obsolescence.

"Findings entered by an administrative agency must be sufficient to inform the parties of the evidentiary bases upon which the ultimate findings rest...." *Hale v. Review Bd. of Indiana Employment Sec. Div.* (1983), Ind.App., 454 N.E.2d 882, 885 (citing *Sloan v. Review Bd.* (1983), Ind.App., 444 N.E.2d 862, 864). As a result, a court is provided with an opportunity for a meaningful review of the decision. *Id.* "The specificity required to enable a court to intelligently re-

---

Wisconsin Blue Chip study, used by the State Board to determine whether economic obsolescence is present in the railroad industry. *Transcript* at 30–33.

**5.** Consequently, the State Board likened the studies to an expert witness hired under a contingent fee agreement: "the self-serving interest that GTE had in controlling the statistical outcome of its 'blue chip' study 'raises the specter of an auctioning of the truth' and casts a pall over its credibility." *Respondent's Brief* at 22 (citing *Wirth v. State Bd. of Tax Comm'rs* (1993), Ind. Tax, 613 N.E.2d 874, 876–77). The court does not find this analogy persuasive, as there are differences between a "hired gun," who is paid to be interested, and the actual party who is, of course, self-interested.

view an agency decision will necessarily vary from case to case, depending upon quantity and complexity of evidence introduced." *Allen v. Scherer* (1983), Ind.App., 452 N.E.2d 1031, 1034 (citing *Charles W. Cole & Son, Inc. v. Indiana & Michigan Elec. Co.* (1981), Ind.App., 426 N.E.2d 1349, 1353).

Both parties have experienced great difficulty in articulating the relationship between the loss of value in the Companies' property and economic obsolescence as defined in *Thorntown I*. *See Thorntown I,* 588 N.E.2d at 617. Once again, the State Board relies on its assertion that the accelerated federal tax depreciation method accounts for economic obsolescence. An assertion must be supported by substantial evidence to prevail. The State Board has not provided the court with this evidence.

Due process problems are implicated when an agency cannot provide a rationale for its determination, thus failing to provide the court with sufficient information to be able to determine whether the agency's finding is supported by the evidence. *See City of Indianapolis v. Nickel* (1975), 165 Ind.App. 250, 262, 331 N.E.2d 760, 767. The complexity involved in calculating true tax values, depreciation reductions, and economic obsolescence percentages makes it imperative that the State Board supply authoritative explanation and evidence demonstrating that economic obsolescence is indeed accounted for in its method. Because the State Board has failed to show how or why its method of depreciation accounts for economic obsolescence, the court must find that the State Board has not presented evidence sufficient to rebut the Companies' prima facie case and that its 1990 assessment of the Companies' property is unsupported by substantial evidence. The cause is therefore REVERSED and REMANDED to the State Board for full consideration consistent with this opinion.