**GTE NORTH INCORPORATED, and Contel of Indiana, Inc., d/b/a GTE Indiana, Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS, C. Kurt Zorn, Chairman, Gordon E. McIntyre, Member, Wanda K. Watts, Member, Respondents.**

Nos. 49T10–9107–TA–00034, 49T10–9107–TA–00035 [1].

Tax Court of Indiana.

April 29, 1994.

---

**1.** For the purpose of trial, the Petitioners' cases have been consolidated. *See Russell v. Johnson* (1943), 220 Ind. 649, 659, 46 N.E.2d 219, 223 (quoting *Lumiansky v. Tessier* (1912), 213 Mass. 182, 188–89, 99 N.E. 1051, 1053).

Steven R. Reed, Bonnie K. Simmons, Westfield, IN, for petitioners.

Pamela Carter, Atty. Gen., Marilyn S. Meighen, Joel Schiff, Deputy Attys. Gen., Indianapolis, IN, for respondents.

FISHER, Judge.

GTE North Incorporated (GTE) and Contel of Indiana, Inc. (collectively referred to as the Telephone Companies) appeal the State Board of Tax Commissioners' (the State Board) assessment of their distributable property for 1991.

### ISSUES

I.   Whether a prior settlement of litigation between GTE and the State Board operates to bar GTE from maintaining all or part of this litigation.

II.   Whether the Telephone Companies are entitled to economic obsolescence adjustments for their distributable property.

III.   Whether the State Board's application of a 30 percent floor to the Telephone Companies' property assessments was improper.

## FACTS AND PROCEDURAL POSTURE

The Telephone Companies are public utilities that do business and own distributable property in Indiana. More specifically, they provide local exchange telephone service and access service in Indiana.

In April 1991, each Telephone Company filed a statement with the State Board pursuant to IND.CODE 6–1.1–8–19. At that time, the Telephone Companies requested that the State Board make adjustments to their individual assessments to reflect losses from economic obsolescence.

Subsequently, the State Board issued tentative assessments of the Telephone Companies' properties without the requested adjustments. The Telephone Companies objected, and the State Board held a hearing on June 27, 1991. On June 28, 1991, the State Board issued orders making its tentative assessments final, stating the Telephone Companies failed to identify any property that required adjustments for economic obsolescence.

The Telephone Companies now appeal. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

When the court reviews a State Board assessment of public utility property, its standard of review is set by statute:

When a public utility company initiates an appeal under section 30 of [IND.CODE 6–1.1–8], the tax court may set aside the state board of tax commissioners' final assessment and refer the matter to the board with instructions to make another assessment if:

(1) the company shows that the board's final assessment, or the board's apportionment and distribution of the final assessment, is clearly incorrect because the board violated the law or committed fraud; or

(2) the company shows that the board's final assessment is not supported by substantial evidence.[2]

IND.CODE 6–1.1–8–32 (footnote added).

## DISCUSSION AND DECISION

### I

In 1990, GTE appealed the State Board's final assessment of its distributable property for that tax year. On February 12, 1991, GTE and the State Board entered into a settlement agreement. Then, when GTE appealed its final assessment of distributable property for tax year 1991, the State Board filed a motion for summary judgment in which it maintained that GTE, under the terms of the previous settlement agreement, was barred from maintaining the 1991 appeal.

In an unpublished opinion on the motion for summary judgment, the court determined the following language of the settlement agreement was a matter of public record:

[GTE] agree[s] to dismiss its case with prejudice and to forego any further dispute, case or controversy regarding the issue of equalization or any other substantive issue raised and pending in the litigation which relate[s] to assessment years 1990 and 1991, so long as the Board complies with the terms set forth herein.

*GTE North Inc. v. State Bd. of Tax Comm'rs* (filed July 7, 1992), Ind.Tax, Case No. 49T10–9107–TA–00034 (unpublished), slip op. at 4 (footnotes omitted). The court also determined that the settlement agreement did not prevent GTE from contesting its 1991 final assessment, but rather from raising "the issue of equalization or any other substantive issue raised and pending in" the 1990 appeal in a dispute concerning its 1991 final assessment. *Id.*, slip op. at 5–6.

■ The State Board, though, claimed that the economic obsolescence issue raised in GTE's 1991 appeal was the same as the equalization issue raised in its 1990 appeal. The court denied summary judgment, howev-

<hr>

2. "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Thorntown Telephone Co. v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 962, 964 (*Thorntown II*) (quoting *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 568 N.E.2d 1116, 1122).

er, "because the parties draw conflicting, reasonable inferences concerning whether the appeals raise the same issues, [and therefore] ... a genuine issue exists for trial." *Id.* at 8–9. Thus, the question to be resolved at trial was whether equalization adjustments and economic obsolescence adjustments are one in the same. The court finds they are not.

Assessment is the "valuation of property ... for the purpose of taxation." *Webster's Third New International Dictionary* (1981) 131. *See also Riggs v. Bd. of Comm'rs of Sullivan County* (1913), 181 Ind. 172, 103 N.E. 1075. The statutory standard of value in Indiana is "true tax value." *See* IND.CODE 6–1.1–31–5. True tax value does not mean fair market value, but rather that value determined under the rules of the state board of tax commissioners. *See* IND. CODE 6–1.1–31–7(d).

> With respect to the assessment of personal property, the rules of the state board of tax commissioners shall include instructions for determining:
>
> (1) the proper classification of personal property;
>
> (2) the effect that location has on the value of personal property;
>
> (3) the cost of reproducing personal property;
>
> (4) the depreciation, including physical deterioration and *obsolescence,* of personal property; and
>
> (5) the true tax value of personal property based on the factors listed in this subsection and any other factor that the board determines by rule is just and proper.

IC 6–1.1–31–7(b) (emphasis added). Thus, economic obsolescence must be considered and accounted for in the true tax value of any given property. In other words, determining economic obsolescence is merely a step in arriving at the assessed value of personal property.

Indiana's equalization process, however, stems from the state constitution's uniformity provision:

> The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. Article X, § 1. *See also* IND. CODE 6–1.1–2–2. Because not all property is alike, "the constitutional requirement of uniform and equal taxation requires that assessments be consistent with similar property of the *same* classification." *Harrington v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 525 N.E.2d 360, 361 (emphasis added) (citing IND. CONST. Article X, § 1). Thus, the necessity exists "to adopt different methods for assessment of different classes of property. in order to achieve a just and uniform valuation." *Indiana State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co.* (1977), 172 Ind.App. 272, 277, 359 N.E.2d 931, 934 (citing *Clark v. Vandalia R. Co.* (1909), 172 Ind. 409, 86 N.E. 851).[3]

Equalization "is a process applied to certain taxpayers and their property by which the assessed value of a taxpayer's property is adjusted so that it bears the same relationship of assess[ment] value to ... [true tax value] as other properties within the same taxing jurisdiction." Jerrold F. Janata, ed., *Property Taxation* 608 (2d ed. 1993). In fact, IND.CODE 6–1.1–14–4 provides that "[t]he state board of tax commissioners shall review the assessments of all tangible property made by the various counties of this state." "If, after its review, the State Board determines a county assessment appears improper, [it] may pursue the equalization remedies created by IND.CODE 6–1.1–14–5 through 6–1.1–14–9." *Bielski v. Zorn* (1994), Ind.Tax, 627 N.E.2d 880, 885. Thus, the equalization process provides the State Board with a method to cure assessment problems and bring all assessments into compliance with Article X, § 1. *Id.*

---

**3.** Furthermore, because classification of property for tax assessment purposes is permissible only to achieve uniformity and equality in result, the classification must not be arbitrary but rather based upon "differences naturally inhering in the subject-matter of the legislation." *Id.* (citing *State ex rel. Lewis v. Smith* (1902), 158 Ind. 543, 580, 64 N.E. 18, 20).

■ The distinction is clear. Economic obsolescence adjustments are given in order to *arrive* at a property's assessed value, or true tax value. Equalization adjustments are given *after* the property's assessed value has been determined to ensure compliance with Article X, § 1. The two adjustments are not the same. In the case at bar, the Telephone Companies are appealing the State Board's denial of economic obsolescence adjustments, not equalization adjustments. Thus, the conflicting inferences that precluded a grant of summary judgment has been resolved and GTE is able to raise an economic obsolescence claim for 1991.

## II

■ "[D]epreciation of property results from three elements: physical deterioration, functional obsolescence, and economic obsolescence." *Thorntown Telephone Co. v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 588 N.E.2d 613, 619 (*Thorntown I*) (citing J. Amdur, *Property Taxation of Regulated Industries*, 40 TAX LAWYER 339, 359 (1987)). Economic obsolescence is defined as

loss in value resulting from external economic factors such as decreased demand, governmental restrictions and social changes. A deduction should be made for economic obsolescence to reflect depressed earning capacity and other economic factors affecting the value of property.

*Id.* at 617 (quoting Amdur, *supra*, at 360 (footnotes omitted)). The Telephone Companies contend their properties suffer from economic obsolescence and that adjustments are therefore necessary to reflect the losses stemming from the economic obsolescence. To support their claim, they prepared and submitted "income shortfall" analyses [4] and "blue chip" studies [5] to the State Board at the June 27, 1991 hearing.

■ The Telephone Companies "bear[ ] the burden to show the State Board's assessment was inaccurate." *See Paul Heuring Motors, Inc. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 620 N.E.2d 39, 41 (citing *Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 911, 913). Thus, they must present a prima facie case, or one in which the evidence is " 'sufficient to establish a given fact and which if not contradicted will remain sufficient.' " *Thorntown Telephone Co. v. State Bd. of Tax Comm'rs* (1994), 629 N.E.2d 962, 964 (*Thorntown II*) (citing *Plough v. Farmers State Bank of Henry County* (1982), Ind.App., 437 N.E.2d 471, 475). The court has previously recognized "income shortfall" analyses and "blue chip" studies as valid methods of quantifying economic obsolescence. *Thorntown I*, 588 N.E.2d at 619, n. 11 (citing IND.CODE 6–1.1–8–26(b)). Therefore, by presenting those studies to both the State Board and the court, the Telephone Companies made a prima facie showing that adjustments for economic obsolescence are necessary.

■ Although the Telephone Companies' burden of proof does not shift, the duty of going forward with evidence may shift several times. *Thorntown II*, 629 N.E.2d at 965 (citing *Scott v. Sisco* (1959), 129 Ind.App. 364, 377, 156 N.E.2d 895, 901). Thus, it was incumbent on the State Board to rebut the Telephone Companies' evidence. The State Board, however, did not. Instead, it rejected their studies on several grounds.

First, the State Board contends that the Telephone Companies' studies, particularly the "blue chip" studies, are unreliable and unverified. Second, the State Board contends that its current method of assessment, the accelerated federal tax depreciation method, already takes into account economic obsolescence, making further adjustments unnecessary. The court finds the State Board's reasons for not considering the Tele-

---

4. The Telephone Companies' income shortfall studies are based on the theory that money will be invested in income-productive properties not for the properties themselves, but rather for rights to future revenues. The difference between the investor's expected rate of return and the actual rate of return is thus considered economic obsolescence. *Transcript* at 19–20.

5. The Telephone Companies' "blue chip" studies compare company data and efficiency factors to industry standards. They were modeled after the Wisconsin Blue Chip study, which is used by the State Board to assess economic obsolescence in the railroad industry. *Transcript* at 108.

phone Companies' studies insufficient to rebut the Telephone Companies' prima facie case.

■ The court recognizes that the State Board, in its discretion, may consider a variety of factors in determining the unit value of a public utility, including "statistics and reports prepared or filed by the company ..." IC 6–1.1–8–26(b)(6). Likewise, the State Board has the discretion to reject submitted statistics and reports if it determines that they are unreliable, *Thorntown II*, 629 N.E.2d at 965, provided the State Board gives "some explanation or make[s] some showing that the [submitted] studies are indeed unreliable." *Id.* at 965. Here, the State Board attempts to distinguish the Petitioners' "blue chip" studies from the Wisconsin Blue Chip study[6], on which they are modeled. More specifically, the State Board maintains that the Wisconsin Blue Chip study is a published, well-debated analysis which has been in existence for nearly 30 years. The Telephone Companies' studies, in comparison, have "not [been] published, recognized or even shown to be accurate from a statistical standpoint." *Respondent's Post Trial Brief* at 15. Furthermore, the State Board contends that it applies a "blue chip" analysis to the railroad industry only; "blue chip" studies are not applied to the telephone industry. *Respondent's Post Trial Brief* at 14.

■ "Findings entered by an administrative agency must be sufficient to inform the parties of the evidentiary bases upon which the ultimate findings rest...." *Thorntown II*, 629 N.E. at 965 (quoting *Hale v. Review Bd. of Indiana Employment Sec. Div.* (1983), Ind.App., 454 N.E.2d 882, 885). As in *Thorntown II*, the State Board has failed to provide the court with any explanation or finding that the studies are indeed unreliable. *See id.*, 629 N.E.2d at 965. For example, it has not defined the process by which a study becomes "recognized" or "accepted." Likewise, the State Board has not explained why the Wisconsin Blue Chip study cannot serve

as *model* of analysis for the telephone industry. Thus, the court cannot meaningfully review the State Board's decision as it does not provide any reasoning for its findings. *See id.*

The State Board also contends, as it did in *Thorntown I* and *Thorntown II*, that its federal accelerated tax depreciation method adequately reflects losses in the value of property due to economic obsolescence and further adjustments are unnecessary. The court rejected this argument in *Thorntown I*, stating the "State Board [ ] ma[de] no finding, nor [did] the record contain any evidence, that the method of depreciation used by telephone companies adequately account[ed] for losses in the value of property from economic obsolescence...." *Thorntown I*, 588 N.E.2d at 619. On remand, the State Board was given another opportunity to show that its method did account for economic obsolescence, but it again failed to make the necessary showing. *See Thorntown II*, 629 N.E.2d at 966. In the case at bar, the State Board again stumbles and falls on the same "hurdle" it attempted to jump in the *Thorntown* series: it has failed to provide substantial evidence that its current method does indeed account for economic obsolescence.

■■ "All property is subject to losses in value from economic obsolescence ..." *Thorntown I*, 588 N.E.2d at 619. Thus, the Telephone Companies submitted studies and reports to show that adjustments were necessary to reflect losses from economic obsolescence. The State Board rebutted this evidence by merely asserting the Telephone Companies' studies were unreliable and that its current method of depreciation adequately accounted for economic obsolescence. Due to "[t]he complexity involved in calculating ... economic obsolescence percentages [ ] it [is] imperative that the State Board supply authoritative explanation and evidence" demonstrating that its assertions are true. *Thorntown II*, 629 N.E.2d at 966. The State Board failed to show how or why its method of depreciation accounts for economic obso-

---

6. "The 'Wisconsin Blue Chip' method compares the performance of the subject railroad to a 'best-of-the-best' analysis of the performance of Class I railroads in 9 separate categories. The best performance in each category becomes the standard to which all others are compared." *Respondent's Post Trial Brief* at 13.

lescence nor did it show why the Telephone Companies' submitted studies were unreliable. Thus, the State Board failed to present evidence sufficient to rebut the Telephone Companies' prima facie case.[7]

### III

■ "The property owned or used by the various public utility companies is classified ... as fixed property ... or ... distributable property." IND.CODE 6–1.1–8–5. While fixed property is assessed locally by a township assessor, IND.CODE 6–1.1–8–24, distributable property is assessed by the State Board. IND.CODE 6–1.1–8–25. Consequently, a public utility company is required to file annually two statements of description. The first statement is filed with the State Board "concerning the value and description of the property which is either owned or used by the company on the assessment date of that year...." IND.CODE 6–1.1–8–19. The other statement is filed "with the assessor of each township ... contain[ing a] description of the company's tangible personal property located in the township." IND. CODE 6–1.1–8–23.

Generally, the State Board calculates the value of distributable property as "the unit value[8] of the company ... minus ... the value of the company's fixed property." IND.CODE 6–1.1–8–26(a) (footnote added). Nevertheless, the State Board has been given the authority to "promulgate rules and regulations to provide equal treatment for the public utility companies within each classification." IND.CODE 6–1.1–8–42(a). One of the rules the State Board promulgated, 50 I.A.C. 5–4–3(d), provides:

> The total valuation of depreciable tangible personal property of a public utility company may not be less than thirty percent (30%) of the adjusted cost of that property. This limitation shall be applied before the application of any other or additional factors in determining a just value of the company under section 2(b) of this rule....

The regulation does not distinguish on its face between fixed and distributable property. Thus, the Telephone Companies argue, 50 I.A.C. 5–4–3(d) mandates the 30 percent floor be applied to both fixed and distributable properties.

■ The State Board argues, however, that because 50 I.A.C. 5–4–3(d) does not distinguish on its face between fixed and distributable property, it "must rely on its expertise, existing statutes and regulations for guidance [to determine the meaning of the provision]." *Respondent's Post Trial Brief* at 23.· Consequently, the State Board asserts that 50 I.A.C. 5–4–3(d) must be applied in harmony with 50 I.A.C. 4.2–4–9(a), which provides in relevant part:

> [T]he total valuation of a taxpayer's assessable depreciable personal property *in a single taxing district* cannot be less than thirty percent (30%) of the adjusted cost of all such property of the taxpayer.

(Emphasis added). The State Board contends that because the regulation refers to property "in a single taxing district," the 30 percent floor is to be applied to fixed proper-

---

7. During discovery, the Telephone Companies elicited information and documents from the State Board regarding obsolescence adjustments given to other public utility companies. They then offered these documents at trial to show that they were treated differently from other taxpayers, in violation of the Indiana Constitution. The State Board objected, maintaining that the evidence was not introduced, and the issue regarding disparate treatment among utility companies was not raised, at the administrative hearing. Thus, the State Board continues, the court is precluded from reviewing the evidence and resolving the new issue. *See State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.* (1981), Ind. App., 420 N.E.2d 1324, 1328 (citing *State Bd. of Tax Comm'rs v. Stone City Plaza, Inc.* (1974) 161 Ind.App. 627, 317 N.E.2d 182) *trans. denied. See*

*also Scheid v. State Bd. of Tax Comm'rs* (1990), Ind.Tax. 560 N.E.2d 1283, 1284.

The Telephone Companies presented sufficient evidence at the administrative level to support their claim for economic obsolescence adjustments. The State Board failed to rebut their prima facie case. Thus, the Telephone Companies have shown that they are entitled to economic obsolescence adjustments notwithstanding the later introduction of the evidence elicited during discovery or the additional issue. Consequently, the court finds consideration of the evidence and issue in dispute unnecessary.

8. "The term 'unit value' means the total value of all the property owned or used by a public utility company." IND.CODE 6–1.1–8–2(16).

ty only, as fixed property, not distributable property, is assessed locally. *See* IC 6–1.1–8–24, IC 6–1.1–8–25. Thus, the State Board continues, "the locally assessed personal property for purposes of the 30 percent floor for a public utility ... is computed by taxing districts as is done for a non-public utility taxpayer."[9] *Respondent's Post Trial Brief* at 25.

"The foremost goal of statutory construction is to determine ... the true intent of the legislature." *Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 768 (citing *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580), *aff'd* (1992), Ind., 587 N.E.2d 1311. Rules of statutory construction are applicable to regulatory enactments as well. *Mahan v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 622 N.E.2d, 1058, 1062 (citing *Manns v. State Dep't of Highways* (1989), Ind., 541 N.E.2d 929, 936). Thus, the foremost goal of regulatory construction in this matter is to determine the intent of the State Board. Consequently, "the court is to give [the regulation's] ... words and phrases their plain, ordinary, and usual meaning ..." *Kenny Kent Chevrolet Co. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 627 N.E.2d 890, 893 (quoting *Fort Wayne Nat'l Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 621 N.E.2d 668, 671). Regulations, like statutes, "must be read within the context of the entire act of which they are a part, thereby giving full effect to all words and clauses." *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 961 (citing *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 987).

In looking to other State Board regulations regarding property assessment, the court finds that the State Board has excluded utilities from the provisions of 50 I.A.C. 4.2–4–9(a). More specifically, in promulgating its general regulations on tangible personal property assessment, the State Board has provided that "[p]ersonal property does not include commercially planted and growing crops while they are in the ground, *property subject to taxation under the Public Utility Tax Act,* or household goods." 50 I.A.C. 4.2–1–1(h) (emphasis added). The Public Utility Tax Act of 1949, IC 1971, 6–1–44–1 to 6–1–44–18 (Burns Code Ed.) was repealed in 1975 and replaced with IC 6–1.1–8–1. *See* Acts 1975, P.L. 47, § 1 through § 4. The Telephone Companies are subject to taxation under IC 6–1.1–8–1 and the corresponding regulations of 50 I.A.C. 5–1–1 to 50 I.A.C. 5–9–1. Thus, they are not subject to the provisions in 50 I.A.C. 4.2, particularly 50 I.A.C. 4.2–4–9(a).

### CONCLUSION

Economic obsolescence adjustments and equalization adjustments are not the same. Consequently, GTE is not precluded from maintaining this litigation. Furthermore, the Telephone Companies have made a prima facie showing that adjustments for economic obsolescence are necessary. The State Board has failed to present evidence sufficient to rebut the Telephone Companies' prima facie case. Likewise, the State Board, in applying the 30 percent floor to fixed property only, has acted contrary to the meaning of 50 I.A.C. 5–4–3(d). For all the foregoing reasons, the cause is REVERSED and REMANDED to the State Board for further action consistent with this opinion.

**9.** All this was accomplished, the Petitioners report, without prior notice or promulgation of a rule change, in violation of IND.CODE 4–22–2. This argument, however, is irrelevant. The State Board, in applying 50 I.A.C. 4.2–4–9(a), did not promulgate a "new" rule. Rather, it merely applied a different rule. Consequently, a violation of IC 4–22–2 did not occur.