**TWO MARKET SQUARE ASSOCIATES LIMITED PARTNERSHIP; Duke Realty Investments, Inc.; The Equitable Life Assurance Society of the United States; and W.R.C. Properties, Inc., Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 49T10–9404–TA–00119.

Tax Court of Indiana.

Sept. 27, 1995.

Stephen H. Paul, Brian S. Fennerty, Janet M. Charles, BAKER & DANIELS, Indianapolis, for Petitioners.

Pamela Carter, Attorney General of Indiana, Ted Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

The Petitioners, Two Market Square Associates Limited Partnership, Duke Realty Investments, Inc., The Equitable Life Assurance Society of the United States, and W.R.C. Properties, Inc. (collectively, the Taxpayers), each appeal a final determination of the Respondent, the State Board of Tax Commissioners (the State Board), valuing their respective properties for the March 1, 1989, and the March 1, 1990, assessment dates.

### ISSUE

Whether the State Board erred in classifying the Taxpayers' paved parking areas as primary commercial/industrial land under 50 I.A.C. 2.1–4–2(f).

### FACTS AND PROCEDURAL POSTURE

The Taxpayers, individually, own parcels of land with improvements in the Park 100 Industrial Complex, located in Pike Township, Marion County, Indiana. Each Taxpayer's parcel includes one or more paved areas which are used for parking.

For both the 1989 and 1990 assessments, the Pike Township Assessor classified each Taxpayer's entire parcel as primary commercial/industrial land. The Taxpayers challenged their assessments, alleging that portions of each parcel should have been classified as undeveloped commercial/industrial land. On review, the Marion County Board of Review did not reclassify the portions of property from primary to undeveloped.

■ Each Taxpayer then appealed its 1989 and 1990 assessments to the State Board. After the State Board conducted its administrative hearings in the four cases, each Taxpayer amended its administrative pleadings to assert that not only should portions of its property be reclassified as undeveloped, but the paved parking areas should be reclassified from primary to secondary land as well. On February 28, 1994, the State Board issued final determinations on each of the Taxpayer's appeals. While it reclassified portions of the primary land as undeveloped, it determined that the paved parking areas did not qualify for a secondary classification.[1]

Subsequently, on April 6, 1994, each Taxpayer initiated an original tax appeal. By order dated November 10, 1994, this court consolidated the four appeals under the above cause number. The matter is now before the court on the parties' cross motions

---

1. The State Board maintains that because the Taxpayers did not argue that they were entitled to secondary classifications under 50 I.A.C. 2.1–4–2(f), in either their administrative pleadings or at the State Board's hearing, the Taxpayers have effectively waived any right to now claim that classification. The court disagrees.

"The fundamental purpose of pleadings in the administrative process is to inform each party of the other's position so that each can properly prepare." *Yunker v. Porter County Sheriff's Merit Bd.* (1978), 178 Ind.App. 364, 368, 382 N.E.2d 977, 981. Nevertheless, when an issue, not raised in the administrative pleading, is actually litigated at the hearing, the failure to object at the hearing to the introduction of that issue has the same effect as amending the pleading to include that issue. *Id.*

In the case at bar, while the Taxpayers did not claim their entitlement to secondary classifications until *after* the State Board hearing, there is no evidence to show that the State Board objected to deciding the issue. Indeed, the State Board's final determinations, issued on February 28, 1994, clearly indicate that the State Board not only considered whether the subject properties were entitled to a secondary classification, but actually determined that they were not. *Exhibits A* (attached to each of the four original complaints). If the State Board believed that the Taxpayers waived the right to argue that they were entitled to secondary classifications, it should have declined to decide the issue and stated its reasons for doing so in the final determinations.

for summary judgment. Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

Summary judgment is appropriate only when no genuine issues of material fact exist and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 960. "Cross motions for summary judgment do not alter the standard for granting summary judgment." *Roehl Transport, Inc. v. Indiana Dep't of State Revenue* (1995), Ind. Tax, 653 N.E.2d 539, 541.

### DISCUSSION AND ANALYSIS

For purposes of the 1989 and 1990 assessment dates, commercial/industrial properties were classified according to their use. *See* 50 I.A.C. 2.1–4–2 (1988 ed.). More specifically, when recording the acreage or square footage of a subject commercial/industrial property, an assessing official entered the following codes on the property record card:

Enter "1" to indicate "PRIMARY IND/ COMM SITE", which is the portion of the land utilized as the primary building site or plant site.

Enter "2" to indicate "SECONDARY IND/COMM SITE", which is the portion of the land utilized for uses which are secondary to the primary use and, therefore, require individual treatment. Use the following sub-codes, which generally apply to industrial operations:

"21" to indicate that the secondary use is parking

"22" to indicate that the secondary use is yard storage, referring to that portion of the land predominantly utilized for material or product storage

"23" to indicate the secondary use as a dump area, referring to that portion of the land predominantly utilized for refuse

Enter "3" to indicate "UNDEVELOPED", which is the portion of land that is usable but is unused.

50 I.A.C. 2.1–4–2(f).

Although both sides to this litigation contend that the language in 50 I.A.C. 2.1–4–2(f)

is unambiguous, they propose different interpretations as to its meaning. The Taxpayers contend that the regulation explicitly provides that the portion of property used for parking must be designated as secondary. The State Board, however, contends that the regulation provides that the portion of industrial/commercial property used for parking may be classified as either primary or secondary. More specifically, the State Board argues that "primary building site or plant site" is broadly construed to include primary parking areas. To support its argument, the State Board cites Reassessment Bulletin RO–33 (RO–33). Issued by the State Board in April of 1989, RO–33 provides in pertinent part:

> The State Board of Tax Commissioners has defined that the primary building or plant site would be land utilized as follows:
>
> 1) The portion of land located under the buildings.
>
> 2) *The portion of the land used for primary parking areas.*
>
> 3) The portion of land used as roadways.
>
> 4) The portion of land used as primary yard storage.

*Stipulated Exhibit 1* (emphasis added). The court must therefore determine whether land used for parking may be classified as primary under 50 I.A.C. 2.1–4–2(f).

Because duly promulgated State Board regulations have the force of law, they are subject to the same rules of construction as statutes. *Western Select Properties, L.P. v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 639 N.E.2d 1068, 1073. Thus, the court's first and foremost task is to ascertain the intent of the State Board in enacting 50 I.A.C. 2.1–4–2(f). *See id.* To accomplish this task, the court will give the regulation's words and phrases their "plain, ordinary, and usual meaning." *See id.* Furthermore, the court will read the regulation as a whole, and not sections or parts of it piecemeal. *Roehl Transport*, 653 N.E.2d at 542.

When assessing commercial and industrial land, property is first identified according to its class. *See* 50 I.A.C. 2.1–4–2(b). The general property classes are: 1) land used

for mining minerals (mineral land & rights); 2) land used for manufacturing, processing, or refining foods and materials (industrial); and 3) land used for general commercial and recreational purposes (commercial). *Id.*

Once land has been categorized according to its class, an assessing official assigns a "land type" code to the parcel. Indeed, the land type code "denotes the classification of all or part of the parcel according to its use." 50 I.A.C. 2.1–4–2(f). 50 I.A.C. 2.1–4–2(f) clearly indicates that a parcel may be divided into three classifications depending on its use: primary, secondary, and undeveloped. *Id.*

As stated earlier, the portion of a subject parcel that is used as the primary building site or plant site is to be designated as primary. *Id.* The portion of property that is used for purposes secondary to the primary use is to be designated as secondary. *Id.* While 50 I.A.C. 2.1–4–2(f) does not define "primary building site or plant site," it does provide three instances of secondary uses: parking, yard storage, and dump areas. *Id.* Thus, under the plain and ordinary meaning of the words in 50 I.A.C. 2.1–4–2(f), the use of property for any parking purpose is a secondary use.

Nevertheless, the State Board argues that property used for parking may be used for either primary purposes or for secondary purposes. The regulation, however, makes no distinction between a primary parking purpose and a secondary parking purpose. Rather, that distinction is found in RO–33 only: "the primary building or plant site would be land utilized as ... [t]he portion of land used for primary parking areas." *Stipulated Exhibit I.* Consequently, RO–33 conflicts with 50 I.A.C. 2.1–4–2(f).

■ The State Board may promulgate rules and regulations to implement Indiana's statutory property tax scheme. *See* IND. CODE 6–1.1–31–1. In addition, the State Board may issue instructional bulletins "to instruct taxing officials of their duties and [to] provide administrative forms ..." 50 I.A.C. 4.1–1–18 (repealed, now 50 I.A.C. 4.2–1–5). Unlike regulations, however, instructional bulletins are not issued pursuant to the promulgation requirements of IND.CODE 4–22–2–3 et seq. and therefore do not have the force of law. *See* I.C. 6–1.1–31–2. Accordingly, to the extent an instructional bulletin conflicts with a regulation, the regulation constitutes the law and prevails. *See Indiana Dep't of State Revenue v. Bulkmatic Transport Co.* (1995), Ind., 648 N.E.2d 1156, 1158.

■ In the case at bar, State Board instructional bulletin RO–33 classifies land used for parking as either primary or secondary. RO–33, however, conflicts with the plain and ordinary meaning of 50 I.A.C. 2.1–4–2(f), in which land used for parking is classified as secondary only. Accordingly, 50 I.A.C. 2.1–4–2 controls.

### CONCLUSION

For the foregoing reasons, the court now REVERSES the final determinations of the State Board. Accordingly, the court REMANDS the Taxpayers' assessments to the State Board to classify the land used for parking as secondary, pursuant to 50 I.A.C. 2.1–4–2(f).