**STATE BOARD OF TAX COMMISSIONERS, Appellant (Respondent below),**

v.

**TWO MARKET SQUARE ASSOCIATES LIMITED PARTNERSHIP; Duke Realty Investments, Inc.; The Equitable Life Assurance Society of the United States; and W.R.C. Properties, Inc., Appellees (Petitioners below).**

No. 49S10–9603–TA–227.

Supreme Court of Indiana.

May 12, 1997.

Pamela Carter, Attorney General, Jon Laramore, Ted J. Holaday, Deputy Attorneys General, Indianapolis, for Appellant.

George C. Patrick, Assistant Lake County Atty., Schreiner & Malloy PC, Schererville, for Amicus Curiae County of Lake.

Michael K. Irwin, Stephen J. Peters, William N. Ivers, Stewart & Irwin, Indianapolis, for Amicus Curiae Metro. School Dist. of Pike Twnshp.

Gordon Lord, County Attorney, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for Amicus Curiae Elkhart County.

Sue A. Beesley, Corporation Counsel, Douglas J. DeGlopper, Assistant Corporation Counsel, Indianapolis, for Amicus Curiae Consolidated City of Indianapolis and Marion County.

Stephen H. Paul, Janet Madden Charles, Baker & Daniels, Indianapolis, for Appellee.

## ON PETITION FOR REVIEW

SULLIVAN, Justice.

We hold that under the regulatory scheme for assessing property values promulgated by the State Board of Tax Commissioners during 1989 and 1990, paved parking areas may be assessed either as "primary" or "secondary" industrial/commercial land.

*Background*

Two Market Square Associates Limited Partnership, Duke Realty Investments, Inc., The Equitable Life Assurance Society of the United States, and W.R.C. Properties, Inc. (the "Taxpayers"), owned parcels of land and improvements on that land in the Park 100 Industrial Complex located in Pike Township, Marion County, Indiana. Each Taxpayer's parcel contained one or more paved parking lots. For both the 1989 and 1990 assessments, the Pike Township Assessor classified each Taxpayer's entire parcel of land as primary commercial/industrial land. Taxpayers challenged the assessments, alleging that portions of the parcels should have been classified as undeveloped commercial/industrial land. The Marion County Board of Review[1] refused to reclassify the portions of property from primary to undeveloped.

Each Taxpayer sought administrative review of the assessments before the State Board of Tax Commissioners. Following the State Board's administrative hearings, each Taxpayer amended the administrative pleadings to assert that not only should portions of its property be reclassified as undeveloped, but the paved parking areas should be reclassified from primary to secondary land as well. On February 28, 1994, the State Board decided to reclassify the portions of the primary land as undeveloped, but determined that the Taxpayers' paved parking areas were properly assessed as primary commercial/industrial land.

On April 6, 1994, each Taxpayer initiated an original tax appeal challenging the valuation of their respective properties for the 1989 and 1990 assessment dates. On November 10, 1994, the Indiana Tax Court consolidated the four appeals under one cause number. Taxpayers and the State Board filed cross motions for summary judgment. The Tax Court granted summary judgment in favor of Taxpayers. Ruling on the cross motions for summary judgment, the Tax Court identified the issue before it as

1. For the 1989 and 1990 assessments "Board of Review" was defined as "a non-jurisdictional board charged with the responsibility of reviewing assessments across properties and taxing districts and to assure that said properties and districts are assessed at a uniform level either raising or lowering assessments accordingly; also referred to as 'Board of Appeals.'" 50 I.A.C. 2.1–6–1 (1988 ed.).

"Whether the State Board erred in classifying the Taxpayers' paved parking areas as primary commercial/industrial land under 50 I.A.C. 2.1–4–2(f)." *Two Market Square v. State Bd. of Tax Comm'rs*, 656 N.E.2d 308, 309 (Ind.Tax 1995). Attempting to ascertain the intent of the State Board in drafting 50 I.A.C. 2.1–4–2(f) and giving great weight to the fact that 50 I.A.C. 2.1–4–2(f) lists parking as one of three examples of a secondary use, the Tax Court determined that "under the plain and ordinary meaning of the words in 50 I.A.C. 2.1–4–2(f), the use of property for any parking purpose is a secondary use." *Two Market Square*, 656 N.E.2d at 311. In granting summary judgment in favor of the Taxpayers, the Tax Court held that the plain and ordinary meaning of 50 I.A.C. 2.1–4–2(f) requires land used for parking to be classified as secondary only and the instructional bulletin RO–33 conflicts with 50 I.A.C. 2.1–4–2(f) by permitting land used for parking to be classified as primary. *Id.*

The State Board petitioned this court for review. The State Board contends that the Tax Court erroneously decided that 50 I.A.C. 2.1–4–2(f) requires all commercial/industrial land used for parking to be classified as secondary because the Tax Court (1) improperly construed the meaning of 50 I.A.C. 2.1–4–2(f); (2) improperly held that RO–33 was inconsistent with 50 I.A.C. 2.1–4–2; (3) improperly ignored uncontradicted evidence showing that the ambiguity in 50 I.A.C. 2.1–4–2 arose from an inadvertent omission; and (4) improperly failed to give deference to administrative agencies' interpretations of their own rules and regulations.[2] We granted the petition for review on March 14, 1996, and now reverse the decision of the Tax Court.

### Discussion

#### I

The context in which this dispute arises is important to understanding this case. The State Board of Tax Commissioners promulgates rules governing real property assessments in the State of Indiana. *See* Ind.Code §§ 6–1.1–31–1 to –9 (1993). These rules explain to assessors and other interested persons how different types of property should be assessed. A general reassessment, effective in 1979, required the reassessment of all real property in Indiana. A comprehensive set of State Board regulations contained in 50 I.A.C. 2–1–1 to 2–13–5 (1979 ed., repealed 1989) governed all real property assessments between the 1979 general reassessment and the 1989 general reassessment.[3] In particular, 50 I.A.C. 2–2–6 ("1979 version") guided assessors in assigning a land "type" code to a particular parcel of land between the 1979 and 1989 reassessments. It was promulgated as follows:

TYPE refers to a one digit code denoting the classification of the parcel, or portion thereof, according to its use.

In entering acreage or square footage, the following type codes apply:

Enter 1 PRIMARY IND/COMM SITE to indicate that portion of the land utilized as the primary building site or plant site, *including primary parking and yard storage.*

Enter 2 SECONDARY IND/COMM SITE to indicate that portion of the land utilized for uses which are "secondary" to the primary use and, therefore, require individual treatment. Use Subcodes . . .

(21) *to indicate that the secondary use is parking;* generally applicable to industrial operations.

(22) to indicate that the secondary use is yard storage, referring to that portion of the land predominantly utilized for material and/or product storage; generally applicable to industrial operations.

(23) to indicate the secondary use as a dump area, referring to that portion of the land predominantly utilized for refuse; generally applicable to industrial operations.

---

**2.** In the petition for review, the State Board also contends that the Tax Court improperly struck as irrelevant the affidavits of Gordon McIntyre and Janis Wilson. We refrain from addressing this issue as it is not essential to our holding today.

**3.** The regulations governing the assessments between the 1979 general reassessment and the 1989 general reassessment were promulgated in 1976 and codified at 50 I.A.C. 2–1–1 to 2–13–5 (1979 ed.).

Enter 3 UNDEVELOPED to indicate that portion of land which is unused but which is capable of being used.

50 I.A.C. 2-2-6 (1979 ed.)(emphasis added).

The 1989 and 1990 assessments were governed by a revised set of rules published at 50 I.A.C. 2.1-1-1 to 2.1-6-1 (1988 ed., repealed 1992).[4] The regulation contained in 50 I.A.C. 2-2-6 ("1989 version") was updated and promulgated as follows:

"LAND TYPE" refers to a code that denotes the classification of all or part of the parcel according to its use.

The following codes apply to the entry of acreage or square footage:

Enter "1" to indicate "PRIMARY IND/COMM SITE" which is the portion of the land utilized as the primary building site or plant site.

Enter "2" to indicate "SECONDARY IND/COMM SITE," which is the portion of the land utilized for uses which are secondary to the primary use and, therefore, require individual treatment. Use the following subcodes, which generally apply to industrial operations:

"21" *to indicate that the secondary use is parking*

"22" to indicate that the secondary use is yard storage, referring to that portion of the land predominantly utilized for material or product storage

"23" to indicate the secondary use as a dump area, referring to that portion of the land predominantly utilized for refuse

Enter "3" to indicate "UNDEVELOPED", which is the portion of land that is usable but is unused.

4. The regulations governing "Real Property Assessments" for the 1989 and 1990 assessments were promulgated in 1986 and codified at 50 I.A.C. 2.1-1-1 to 2.1-6-1 (1988 ed.).

5. While both parties briefed the issue of whether collateral estoppel precludes the State Board from litigating the particular question on appeal in this case, the arguments appeared in the briefs submitted to this Court *after* the State Board's petition for review had been granted. Indiana

50 I.A.C. 2.1-4-2(f) (1988 ed.)(emphasis added).

In April of 1989 the State Board issued Reassessment Bulletin RO-33 (RO-33) which provides in part:

▮ The State Board of Tax Commissioners has defined that the primary building or plant site would be land utilized as follows:

1) The portion of land located under the buildings.

2) *The portion of the land used for primary parking areas.*

3) The portion of land used as roadways.

4) The portion of land used as primary yard storage.

*Stipulated Exhibit 1* (emphasis added). A comparison of the 1979 version with the 1989 version reveals that the 1989 version does not include the specific language indicating that primary site "includ[es] primary parking and yard storage." However, RO-33 clarified that ambiguity. The question before this court is whether, under 50 I.A.C. 2.1-4-2, paved parking areas could be assessed in 1989 and 1990 as secondary only (as the Tax Court concluded) or as either primary or secondary (as the State Board contends).[5]

## II

▮ The State Board argues that the Tax Court erred in its construction of 50 I.A.C. 2.1-4-2. The rules of statutory construction apply to the construction of administrative regulations, *Indiana Dep't of Public Welfare v. Payne,* 622 N.E.2d 461, 465 (Ind.1993), including State Board regulations. *Western Select Properties, L.P. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1073 (Ind.Tax 1994). Regarding the interpretation of the regulations of the State Board, the Tax Court states, "[T]he foremost goal of regula-

Appellate Rule 18 governs what issues are before this Court by requiring that the petition for review "specify with particularity wherein the Tax Court committed error and the circumstances giving rise to such error." Ind.Appellate Rule 18(D)(1)(d). The collateral estoppel issue was not presented in the petition for review nor in the Preliminary Brief in Support of the Petition for Review and so is not properly before this Court on review. *See Boehm v. Town of St. John,* 675 N.E.2d 318, 320 n. 4 (Ind.1996).

tory construction ... is to determine the intent of the State Board" by giving the words and phrases "their plain, ordinary, and usual meaning ..." and by reading the regulations "within the context of the entire act of which they are a part...." *GTE North Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 889 (Ind.Tax 1994) (citations omitted).

We interpret 50 I.A.C. 2.1–4–2(f) differently from the Tax Court. When the meaning of an administrative regulation is in question, the interpretation of the administrative agency is given great weight unless the agency's interpretation would be inconsistent with the regulation itself. *Indiana Dep't of State Revenue v. Bulkmatic Transport Co.,* 648 N.E.2d 1156, 1158 (Ind.1995) (citations omitted). Nothing in 50 I.A.C. 2.1–4–2(f) requires that parking be classified only as secondary. The State Board promulgated 50 I.A.C. 2.1–4–2(f) and interprets the regulation to permit land used for parking to be treated as primary or secondary depending upon its use. The State Board's interpretation of 50 I.A.C. 2.1–4–2(f) is evidenced by the following: (1) State Board's promulgation of Reassessment Bulletin RO–33 explaining that "primary building site," includes the portions of land used for parking; (2) during the 1989 and 1990 assessments, the State Board approved the classification of parking areas as primary commercial land in the appropriate cases; and (3) the 1992 version of the assessment rules includes "regularly used parking areas" as an example of primary commercial or industrial land, *see* 50 I.A.C. 2.2–4–1(18)(1992 ed.).

We conclude that the State Board's interpretation of 50 I.A.C. 2.1–4–2(f) is not inconsistent with the regulation itself. Attempting to give the words and phrases of the regulation their plain and ordinary meaning, we construe the statute to permit the classification of parking land as either primary or secondary. First, 50 I.A.C. 2.1–4–2(f) provides that the portion of the land utilized as the "primary building site or plant site" is to be classified as primary. The

portion of the land utilized for purposes secondary to the primary use are to be classified as secondary. *Id.* Nothing in the regulation precludes parking areas from being considered a part of the primary building site or plant site. We agree with the State Board that 50 I.A.C. 2.1–4–2(f) is, in part, a procedural provision. Subsection (a) of 50 I.A.C. 2.1–4–2 provides, "This section describes the procedures for commercial and industrial data collection." Therefore, unlike the Tax Court, we do not interpret 50 I.A.C. 2.1–4–2(f) to require that all commercial land used for parking be classified as secondary. Rather, we construe the relevant provision of the regulation as an explanation to local assessment officials that they should enter subcode 21 on the property record card when the secondary commercial use is parking. For the foregoing reasons, we conclude that during the 1989 and 1990 assessments, 50 I.A.C. 2.1–4–2(f) permitted the paved parcels of land used for parking to be classified as primary.[6]

### III

Finally, the State Board urges this Court to order the Tax Court to grant the State Board's cross motion for summary judgment. The State Board of Tax Commissioners' final determination is reversible only when it is "unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious." *Mid–America Mailers, Inc. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 380, 382 (Ind.Tax 1994). In the present case, Taxpayers failed to establish a basis to reverse the State Board's determination that parking areas may be classified as either primary or secondary commercial/ industrial land. Therefore, we order that summary judgment be entered in favor of the State Board of Tax Commissioners.

### Conclusion

We reverse the Tax Court's grant of summary judgment in favor of Taxpayers and

---

**6.** We reject the Tax Court's opinion that the State Board may not issue and rely upon an information bulletin to clarify the procedural requirements of the regulations explaining how to fill out the property assessment cards, at least in these circumstances where the bulletin is entirely consistent with the regulation.

order that summary judgment be entered for the State Board of Tax Commissioners.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

BOEHM, J., not participating.