**LAKE COUNTY TRUST COMPANY NO. 1163, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**Cause No. 71T10–9609–TA–00104.**

Tax Court of Indiana.

May 21, 1998.

Timothy D. Hernly, James A. O'Brien, Philip J. Faccenda, Jr., Barnes & Thornburg, South Bend, for Petitioner.

Jeffrey A. Modisett, Attorney General, Ted J. Holaday, Vincent S. Mirkov, Deputy Attorneys General, Indianapolis, for Respondent.

FISHER, Judge.

Lake County Trust Company No. 1163 (Lake County Trust) appeals the final determination of the State Board of Tax Commissioners (State Board) assessing its property as of the March 1, 1989 assessment date. Lake County Trust presents one issue to the Court in its original tax appeal: Whether the State Board rebutted Lake County Trust's prima facie case establishing the proper amount of obsolescence to be considered in valuing its property.

## Procedural History

Lake County Trust owns property (a retail store and auto service center) that is leased to K–Mart at 7925 Indianapolis Boulevard in Hammond, Indiana. Unhappy with its property taxes, Lake County Trust filed a Form 130 Petition with the Lake County Board of Review (BOR) appealing its March 1, 1989 assessment. On October 18, 1991, the BOR issued its determination regarding Lake County Trust's assessment. Unsatisfied with this result, Lake County Trust then appealed the BOR's assessment determination to the State Board via a form 131. On August 3, 1995, the State Board conducted a hearing on the Form 131 petition. The State Board issued its final determination on July 26, 1996, resulting in a lowered tax assessment for Lake County Trust. However, Lake County Trust's claim for economic obsolescence was not allowed by the State Board. Lake County Trust sought review of the denial of economic obsolescence for the subject property by filing this appeal to this Court. This issue was tried before the Court on July 18, 1997.

## Standard of Review

The State Board's assessment is presumed correct, and the taxpayer bears the burden of demonstrating that the State Board's final determination is improper. *See Zakutansky v. State Bd. of Tax Comm'rs,* 691 N.E.2d 1365, 1367 (Ind. Tax Ct.1998). This Court has recognized that the State Board must be given a great deal of discretion in carrying out its responsibilities. Consequently, the party challenging an assessment bears the burden of demonstrating that the assessment is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds the State Board's statutory authority, or is arbitrary or capricious. *Vonnegut v. State Bd. of Tax Comm'rs,* 672 N.E.2d 87, 89 (Ind. Tax Ct.1996), *review denied.* More specifically, when a taxpayer challenges the State Board's determination denying an obsolescence adjustment, the taxpayer has the burden to show the State Board assessment is improper. To meet that burden the taxpayer must present at least a prima facie case. *See Clark v. State Bd. of Tax*

*Comm'rs,* 694 N.E.2d 1230, 1234 (Ind. Tax Ct.1998).

## Factual Background

Lake County Trust constructed the buildings on its property in 1966. Thereafter, Lake County leased the property to S.S. Kresge Company beginning in 1967. (Tr. at 3–4, Pet'r Ex. 2 (the lease)). The lease term began in April 1967, the date of occupancy. (Tr. at 4, Pet'r Ex. 1 at 14). The lease provides for an initial term of twenty years and further specifies that the tenant has options to extend the term of the lease "upon the same terms and conditions" for three additional five-year periods by giving notice not less than six months prior to expiration of the term. (Pet'r Ex. 2, Art. 2, 10 and 12). As of 1993, two of those options for renewal had been exercised; thus the lease was extended until at least 1997 and might be extended until 2002. (Tr. at 19).

The lease itself provides that Lake County Trust, as the landlord, is responsible for providing and paying for fire and other casualty insurance on the buildings. (Ex. 2 ¶ 19). It provides that the tenant is responsible for interior maintenance and repair, including all plate glass, while Lake County Trust has responsibility for all other maintenance and repairs. (Ex. 2 ¶ 14). There is also a provision that, if the landlord fails to pay any taxes when they are due, the tenant can give notice and pay them for the landlord. In that event, the tenant is authorized to demand payment of any such amount from the landlord and to withhold any and all rental payments due as payment for that indebtedness. (Ex. 2 ¶ 29). If the tenant exercises its right to make alterations or additions to the buildings or structures on the subject property, the tenant is responsible for any additional taxes, insurance or maintenance costs attributable to those changes. (Ex. 2 ¶ 15).

At trial, Lake County Trust's expert witness, Donald Renfro, a real estate appraiser, testified that generally pursuant to this particular lease between the Lake County Trust and Kresge, real estate taxes, insurance and common area maintenance are not paid by the tenant. Interior maintenance, he admitted, is paid by the tenant. (Tr. at 19–20). Referring to four other properties that he characterized as "comparable,"[1] Renfro reported that more current leases typically make the tenant responsible for all or part of the real estate taxes, insurance and maintenance, sometimes above base-year levels. (Ex. 1 ¶ 14). Thus, Renfro concluded that the lease in this case was "far less profitable" to Lake County Trust than leases on other properties where such expenses are reimbursed by the tenant. (Tr. at 22, 39). Furthermore, this same building would be more profitable for the owner if it simply were available for rent with more favorable terms. (Tr. at 39, Ex. 1 at 17).

Lake County Trust sought review of its 1989 tax assessment for the subject property. It made several claims including, "[t]he subject property suffers from substantial functional and economic obsolescence as evidenced by, among other things, the low rent generated." (State Bd. Tr., Ex. A). A hearing on the petition for review was held on August 3, 1995. Donna Thomas was one of the State Board's hearing officers for that hearing. Donald Renfro was one of the taxpayer's representatives at the hearing. (State Bd. Tr.). Several issues were resolved during the course of the administrative proceedings, including allowing a claim for functional obsolescence on this property. (State Bd. Tr., Ex. D). But the State Board determined that "[t]he request for economic obsolescence based on the lease between the owner of the parcel and the K–Mart corporation was found not to qualify for any of the reasons set forth in 50 IAC 2.1–5 as causes for economic obsolescence." (State Bd. Tr., Ex. D).

## Analysis and Discussion

"Obsolescence" is defined as the "diminishing of a property's desirability and usefulness brought about by either functional inadequacies and overadequacies *inherent in the property itself,* or adverse economic factors external to the property." IND. ADMIN. CODE tit. 50 r. 2.1–6–1 (1992) (emphasis added).

---

1. These four leases were for the following properties located elsewhere in Indiana: (1) a Wal-Mart in Merrillville; (2) a K–Mart in Elkhart; (3) a Wal–Mart in Rochester; and (4) a K–Mart in Princeton.

The State Board's regulations provide for two types of obsolescence depreciation as follows:

Obsolescence Depreciation is composed of functional and economic loss of value. Functional Obsolescence may be due to a poor floor plan, mechanical inadequacy or superadequacy, functional inadequacy or superadequacy due to size, style, age, or other losses. It is evidenced by conditions within the property. Economic obsolescence is caused by factors external to the property, such as inharmonious property uses.

Note that depreciation includes loss in value from all causes. Physical depreciation and functional obsolescence relate to deficiencies within the property itself. However, economic obsolescence is due to factors external to the property.

OBSOLESCENCE DEPRECIATION. In addition to Physical Depreciation, some structures have obsolescence loss of value. These effects are much less noticeable than physical depreciation and must be examined in depth. Obsolescence depreciation can be classified as FUNCTIONAL or ECONOMIC.

Causes of Economic Obsolescence: The assessor must make a thorough investigation of the economic background of each individual structure in order to determine the degree of obsolescence which exists. Location of structure unappropriate [sic] for its neighborhood

A neighborhood that is in transition of use Inoperative or inadequate zoning ordinances or deed restrictions

Building code requirements which set current acceptable construction standards

*Market acceptability of the product or devices for which the property was constructed or is currently used*

Termination of the need of the property due to actual or probable changes in economic or social conditions

Insufficiency of utilities—unpaved streets, inadequate fire protection, unreliable water, gas or electric systems

Hazards—danger from floods or other special hazards

Accurate determination of Obsolescence Depreciation will require the Assessor to recognize the symptoms of obsolescence and exercise sound judgement in equating his observation of the property to the correct deduction in value from Reproduction Cost New.

*Id.* r. 2.1–5–1 (emphasis added).

In this case, after consideration of the evidence presented to it, the State Board determined that the terms of the lease that the owner had agreed to for the K–Mart property did not qualify for any of the reasons set forth in the above regulation for economic obsolescence. Lake County Trust contends that the justification it offers for economic obsolescence is specifically listed by the regulation—the market acceptability of the product. It argues that the product in question is the real estate itself. (Pet'r Br. at 12). Furthermore, Lake County Trusts argues that it would be "nonsensical" to allow only the items listed and the list should be considered merely illustrative and not exhaustive. (Pet'r Br. at 11).

The State Board contends that Lake County Trust's argument completely ignores the fact that the reason it offers is not a reasonable interpretation or expansion from one of those reasons. The State Board argues:

The facts presented by [Lake County Trust] are not comparable to any of the listed external factors that might occur to diminish the usefulness of a property and that would justify lowering an assessment. Rather, [Lake County Trust] has sought tax relief because of just one of countless ways through which its own business judgments can make any business unprofitable or less profitable than they might otherwise be. Therefore, it was reasonable and appropriate for the State Board to refuse to expand the areas for which its regulation provides for adjustment of an assessment based on economic obsolescence.

(Resp. Br. at 7). In short, the State Board maintains that because Lake County Trust does not claim any of those conditions specifically listed in the regulations, it is not entitled to an obsolescence deduction in this case. It directs this Court's attention to two cases, *State Board of Tax Commissioners v. Two Market Square,* 679 N.E.2d 882, 886 (Ind. 1997); *Indiana Department of State Reve-*

*nue v. Bulkmatic Transport Co.,* 648 N.E.2d 1156, 1158 (Ind.1995), for the proposition that the State Board's interpretation of this regulation is entitled to great weight.

■ As to the contention that the property is itself the "product" for purposes of obsolescence in this case, the Court finds that the State Board has the better of this argument. The rules of statutory construction apply to the construction of administrative regulations, including the State Board's regulations. *Two Market Square,* 679 N.E.2d at 885. When interpreting these regulations, "the foremost ·goal of regulatory construction ... is to determine the intent of the State Board" by giving the words and phrases "their plain, ordinary, and usual meaning ..." *GTE N., Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 889 (Ind. Tax Ct.1994) (citations omitted). The plain language of regulation 2.1–5–1 indicates that it is the marketability of the product or device that the property was constructed or used for that is important—not the property itself. For example, a cigarette producer could argue that its manufacturing plant is entitled to an economic obsolescence deduction because of the unacceptability of cigarettes in the current market. On the other hand, a software company such as Microsoft would have a hard time arguing for an economic obsolescence deduction for a manufacturing plant producing copies of its Windows operating system.

■ However, as to the State Board's argument that this list is exhaustive, the Court agrees with Lake County Trust. Nothing in the regulation indicates that the list is exhaustive rather than illustrative. The list, as any regulation, must be read "within the context of the entire act of which they are a part...." *Id.* Because 2.1–5–1 is explicit in noting that depreciation generally includes loss in value from *all* causes, and economic obsolescence is due to factors external to the property, the Court finds that the list must be illustrative rather than exhaustive. The Court notes that Lake County Trust's argument is bolstered by the latest version of this regulation, which specifically states that the causes of economic obsolescence are not limited to the given list. *See* IND. ADMIN. CODE tit. 50, r. 2.2–10–7(e)(2) (1996).

With the law applicable to this case somewhat illumined, the Court now turns to Lake County Trust's factual claims.

### Lake County Trust's Prima Facie Case

■ Lake County Trust claims that it established a prima facie case for economic obsolescence at ·the State Board hearing. Lake County Trust argues that the documents presented at the hearing showed and the testimony Donald Renfro demonstrated that the Lease contains a fixed rental rate that is significantly lower than rental rates received by comparable properties in the area. (Tr. 22; Pet'r Br. at 8). Lake County Trust showed that the lease requires the landlord to pay for real estate taxes, insurance, and common area maintenance costs, while such expenses are borne by the tenant under comparable leases. Furthermore, Mr. Renfro indicated that the value of the property was 48% lower than the value of comparable properties on March 1, 1989 as a direct result of the restrictions imposed by the lease. Mr. Renfro arrived at this figure using generally recognized appraisal techniques (comparable sales). (Tr. at 35–37). He concluded that this should result in a 48% economic obsolescence adjustment. (Tr. 33–36).

The State Board counters this argument by claiming that a prima facie case for economic obsolescence was presented at neither the administrative level nor to the Tax Court. The State Board maintains that its determination has nothing to do with the Lake County Trust's evidence being inaccurate or unreliable. Rather, the taxpayer's evidence is irrelevant in this case. The evidence does not establish a reason to relieve Lake County Trust from its fair share of the overall burden of taxation. Simply put, the State Board argues that Lake County Trust has failed to present probative evidence on the issue of obsolescence and has therefore failed to make its prima facie case. (Resp. Br. at 9). Where there is no cause of obsolescence, there is no obsolescence to quantify.

The question then becomes whether or not the State Board abused its discretion in not finding property encumbered by an unfavorable lease to be entitled to economic obsolescence. Does a failure to realize as much net income from the subject property as it would

'if it shifted the cost of taxes, insurance and maintenance to K–Mart have anything to do with the economic obsolescence—or tax assessment in Indiana? The Court finds that the State Board did not abuse its discretion in denying Lake County Trust's claim for economic obsolescence based on its unfavorable lease.

■ Lake County Trust's arguments about "market acceptability" and what a "willing buyer" would pay for the subject property as compared to other similar properties, and its citation to cases discussing long-term, below-market K–Mart leases in other states [2] does nothing to support a claim for economic obsolescence in a tax system that is not based on market value. In Indiana, tax assessments are not required to be based on market value. *Boehm v. Town of St. John,* 675 N.E.2d 318, 327 (Ind.1996). Therefore, Renfro's opinion that a willing buyer would not pay as much for this property as that buyer would for comparable property with more favorable lease terms is not determinative of the obsolescence claim. *See Canal Square Limited Partnership v. State Bd. of Tax Comm'rs,* 694 N.E.2d 801, 805–07 (Ind. Tax Ct.1998) (while reproduction cost most important for calculating obsolescence, market information not irrelevant).[3] Thus, in addition to being against the State Board's specific interpretation of the regulation in this case, Lake County Trust's claim is also contrary to the foremost obligation of the judiciary—to determine the intent of the State Board's regulation by giving the words and phrases their plain, ordinary and usual meaning and by reading the regulations within the context of the entire act of which they are a part. *Two Market Square,* 679 N.E.2d at 885; *GTE N.,* 634 N.E.2d at 889.

Furthermore, Lake County Trust's reliance on this Court's holdings concerning the State Board's obligation to rebut taxpayer's studies and statistics establishing a prima facie case in cases such as *Thorntown Telephone Co. v. State Board of Tax Commissioners,* 588 N.E.2d 613 (Ind. Tax Ct.1992) (*Thorntown I* ), *Thorntown Telephone Co. v. State Board of Tax Commissioners,* 629 N.E.2d 962 (Ind. Tax Ct.1994) (*Thorntown II* ) and *GTE N.,* 634 N.E.2d 882 provide no support where a prima facie case for economic obsolescence was not presented. Similarly, *Western Select Properties v. State Board of Tax Commissioners,* 639 N.E.2d 1068 (Ind. Tax Ct.1994) does not support the taxpayer in this case. The Court's statement in *Western Select* that the State Board must provide some reasoning to support its determination about the amount of obsolescence it allowed for a property and that its subjective determination of obsolescence without any supporting evidence was arbitrary and capricious has no application when the disputed determination was to refuse an underlying *reason* for obsolescence. In a case such as this one, there is no obligation for the State Board to rebut anything.

Finally, the evidence does not establish that there is anything inherently wrong with the property itself. The location and surroundings apparently do not diminish its value. There was no evidence that there was any problem with occupancy or a high vacancy rate for the property. Lake County Trust has excluded other, possibly relevant concerns about valuation by arguing that only the terms of the current lease need to be changed to make this property much more profitable and valuable. The evidence establishes that Lake County Trust would be able to lease the property again, with more favor-

**2.** Lake County Trust cites *City and County of Denver v. Board of Assessment Appeals,* 848 P.2d 355 (Colo.1993) and *C.A.F. Investment Co., v. Saginaw,* 410 Mich. 428, 302 N.W.2d 164 (1981) for the proposition that below-market terms of leases were standard provisions for such leases with S.S. Kresge Company in 1967. Both cases involved the valuation of property in states where property tax system is based on market value. While these cases support Lake County Trust's argument that the fair market value of property subject to such a lease agreement is negatively effected, they are not relevant to the determina-

tion of economic obsolescence in Indiana's True Tax Value system of tax assessment.

**3.** The Court has previously noted the bifurcated nature of the True Tax Value system as it relates to economic obsolescence. The True Tax Value system eschews market value as its basis, yet it needs market values to be considered for economic depreciation. *See Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 386 (Ind. Tax Ct.1997), *petition for review filed,* January 21, 1998.

able terms, if it could escape from the current lease obligations. Thus, the tax assessment should not be reduced due to economic obsolescence.

## Conclusion

While depreciation includes loss in value from all causes, Lake County Trust has established no such loss in value for the subject property. All Lake County Trust has proven is that in 1967 it made a business decision that it would now like to change. The fact that K–Mart exercised each available option to renew the lease of the property is evidence that the property is still used and useful for the same purpose for which it was built. There is no evidence to the contrary. Based on the foregoing reasons, the State Board's denial of economic obsolescence in this case is AFFIRMED.