WHITE SWAN REALTY, Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9701–TA–00019.

Tax Court of Indiana.

May 24, 1999.

Curtis J. Dickinson, David L. Pippen, Dickinson & Abel, Indianapolis, Indiana, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

White Swan Realty (White Swan) appeals the final determinations [1] of the State Board of Tax Commissioners (State Board) fixing the assessed value of two real estate parcels

---

1. Although the State Board issued two final determinations in this matter for two parcels, the record indicates that both final determinations were merged into one. Thus, the Court will refer to the final determinations as one by using the term final determination.

it owned located in Allen County, Indiana as of March 1, 1992.

## ISSUES

I. Whether the State Board's final determination with respect to division wall pricing of the subject properties lacked substantial evidentiary support.

II. Whether the State Board's final determination with respect to the grade assigned to the subject properties lacked substantial evidentiary support.

III. Whether the State Board's final determination with respect to obsolescence depreciation lacked substantial evidentiary support.

IV. Whether the State Board's final determination with respect to condition lacked substantial evidentiary support.

V. Whether the State Board's final determination with respect to land classification and negative influence factor lacked substantial evidentiary support.

## FACTS AND PROCEDURAL HISTORY

White Swan owns two parcels of real estate located in Allen County, Indiana. Both parcels consist of land and improvements. These parcels are designated as # 29–003–0020 (Parcel 20) and # 29–003–0049 (Parcel 49). On May 6, 1994, White Swan filed two Form 131 petitions with the State Board challenging the assessments made by the Allen County Board of Review (BOR).[2]

A hearing on these petitions took place on November 9, 1995 in Allen County. On November 22, 1996, the State Board issued final determinations with respect to the petitions.

2. See IND.CODE ANN. § 6–1.1–15–3(a) (West Supp. 1998).

3. The regulations governing the assessment of commercial property fail to offer a formal definition of a division wall. However, the Court infers the meaning of that term by examining the regulation's description of a row adjustment for residential properties. See IND. ADMIN. CODE tit. 50, r. 2.1–3–4(b) (1992) (codified in present form at *id.* r. 2.2–7–8.1(b) (1996)); *Phelps Dodge v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1099, 1105 n. 11 (Ind. Tax Ct.1999)(Although the Court cannot assume that language in one regulation is applicable to another, the Court can use one regulation to determine relevant considerations.),

In its final determinations, the State Board made adjustments to the earlier assessment made by the BOR. Deeming the adjustments made by the State Board to be insufficient, White Swan filed this original tax appeal on January 3, 1997. On June 15, 1998, the parties tried this case before this Court. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The State Board is afforded great deference when it acts within the scope of its authority. *See King Indus. Corp. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 338, 339 (Ind. Tax Ct.1998). Accordingly, the Court will reverse a final determination made by the State Board only when it is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *See id.*

### Discussion

#### I. Division Wall Adjustment

■ At issue is a division wall[3] joining buildings A and B situated on Parcel 20. Originally, the wall in question was the exterior wall of building A. Subsequently, White Swan added building B to building A. As a result, what was originally an exterior wall of building A became a division wall separating the two buildings. For assessment purposes, the buildings were assessed separately. (Resp't Br. at 12). The buildings in question were priced from the General Commercial Mercantile (GCM) schedules with building A priced as a supermarket and building B priced as a neighborhood shopping center.

*petition for review filed,* Mar. 20, 1999. *But cf. Western Select Properties v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1073 (Ind. Tax Ct.1994) (The Court can refuse to import the meaning of one regulation into the meaning of another.). A "row house" division wall is defined as a "common" or "party" wall that separates the individual dwelling units. *See* IND. ADMIN. CODE tit. 50, r. 2.1–3–4(b). Accordingly, a division wall in the commercial property context is a common or party wall that separates two individual commercial units or structures. Buildings A and B are separated by such a common wall.

White Swan contends that the division wall adjustment was improper and that even if proper, the division wall adjustment was erroneously calculated. The State Board contends that the division wall adjustment was warranted because neither of the models used to assess buildings A and B contain division walls.[4] *See Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 802–03 (Ind. Tax Ct.1998) (discussing various ways in which buildings being assessed deviate from models used to assess those buildings are accounted for in the regulations), *reh'g denied*, 705 N.E.2d 1084. Therefore, according to the State Board, the division wall adjustment is necessary to arrive at an accurate assessment in this case. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(c) (1992) (codified in present form at *id.* r. 2.2–10–6.1(c)(2) (1996)).

■ In calculating a division wall adjustment, the assessor must first determine the reproduction cost of the division wall.[5] Then the assessor must divide that cost by the square footage of the entire building in order to determine the amount to be added to the base rate of that building.[6]

■ In its final determination, the State Board concluded that the presence of a division wall added $3.65 to the base rate of building B. However, there is no evidence in the record to support this figure. Accordingly, the Court is unable to determine how this figure was calculated. This alone mandates reversal. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1240 (Ind. Tax Ct.1998) (court must be apprised of the basis of a State Board final determination). In

addition, assuming arguendo that this figure represents the proper reproduction cost (expressed in terms of cost per square foot or cost per lineal foot, the record is silent as to which) of the division wall, there is no evidence in the record to suggest that the assessor determined the proper adjustment to the base rate of building B once the reproduction cost of the division wall was determined. (There is a difference between the per square foot reproduction cost of the division wall and how much that division wall adds to the per square foot or per lineal foot reproduction cost (i.e., base rate) of the building being assessed). In fact, the testimony of the hearing officer indicates that the $3.65 figure was added directly into the base rate of building B. (Trial Tr. at 23–24). This was improper.

■ Another problem with the State Board's final determination is the possibility of double counting. Although the regulations state that the cost of the division wall must be added,[7] care must be taken so as to avoid double counting one common wall.[8] In addition, when two connected buildings are assessed separately, a division wall adjustment is not warranted.[9] This is demonstrated by the facts of this case: neither building B nor building A, *on their own*, have a division wall. Only when two connected buildings are assessed as one does the division wall adjustment make sense. Although it may be advisable to assess two connected buildings separately, the assessor must not double count the common wall separating the two buildings. In this case, the record indicates that the State Board assessed the

---

**4.** White Swan implies that the common wall is actually a partition wall and therefore would be accounted for in the models. The Court cannot agree. There is a difference between a partition wall and a division wall. Partition walls are found inside a structure and are used to separate different *sections* found within that structure. A division wall is a common wall that separates *two different structures*. Therefore, the Court finds that the wall that separates buildings A and B is a division wall.

**5.** In making this calculation, the assessor should, if possible, use the unit-in-place cost tables found in IND. ADMIN. CODE tit. 50, r. 2.1–4–10 (1992) (codified in present form at *id.* r. 2.2–15–1 (1996)). *See Whitley Prods., Inc. v. State Bd. of*

*Tax Comm'rs*, 704 N.E.2d 1113, 1117 (Ind. Tax Ct.1998), *review denied*.

**6.** The base rate of a building is stated as a per square foot value. *See Barth, Inc.*, 699 N.E.2d at 802 n. 5.

**7.** *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(c).

**8.** The double counting problem arises even when there is no division wall adjustment and two buildings are assessed separately.

**9.** It is important to note that two freestanding units will have a higher reproduction cost than two units connected by a common wall.

buildings separately, but *added* the cost of the common wall to building B, thereby double counting the common wall.[10]

For the above stated reasons, the State Board's final determination is reversed and remanded for recalculation of the base rate consistent with the foregoing.

## II. Grade

White Swan contends that the State Board's final determination with respect to grade applied to Parcel 49 is erroneous. White Swan argues that because the regulations governing grade have no ascertainable standards[11], any final determination of grade must be reversed. *See* IND. CONST. art. I, § 12; *see Harrington v. State Bd. of Tax Comm'rs*, 525 N.E.2d 360, 362 (Ind. Tax Ct.1988) (quoting *Commission on General Educ. v. Union Township Sch.*, 410 N.E.2d 1358, 1362 (1980)). (Ascertainable standards are necessary to "provide the Court with the tools necessary for effective judicial review."). The grading of improvements is an important part of the true tax value system. *See Whitley Prods., Inc.*, 704 N.E.2d at 1116 (Ind. Tax Ct.1998). Assessors use cost schedules to determine the base reproduction cost of a particular improvement. *Id.* Various grades are then assigned to an improvement based on the quality of the improvement's materials, design, and workmanship. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992) (codified in present form at *id.* r. 2.2–2–10–3(a) (1996)); *see also Barth, Inc.*, 699 N.E.2d at 804 n. 12; *Zakutansky v. State Bd. of Tax Comm'rs*, 696 N.E.2d 494, 495 n. 1 (Ind. Tax Ct.1998). The grades represent multipliers that are applied to the base reproduction cost of an improvement as calculated by using the cost schedules provided in the regulations. *See Whitley Prods.*, 704 N.E.2d at 1116 (citing *Zakutansky*, 696 N.E.2d at 496 n. 5; *Garcia v. State Bd. of*

*Tax Comm'rs*, 694 N.E.2d 794, 796–97 (Ind. Tax Ct.1998)).

This Court has held that a taxpayer may not simply point out the inadequacies of the present system and expect to secure a reversal. *See Phelps Dodge*, 705 N.E.2d at 1104; *Dana Corp. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1244, 1247 (Ind. Tax Ct.1998); *see also Town of St. John v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1387, 1389–90 (Ind. Tax Ct.) (order and judgment entry), *rev'd in part, aff'd. in part*, 702 N.E.2d 1034 (Ind. 1998). Instead, the taxpayer must offer probative evidence relating to the grade issue. *Whitley Prods., Inc.*, 704 N.E.2d at 1121. White Swan has not done so. Thus, the State Board's final determination is affirmed on the grade issue.

## III. Obsolescence

White Swan argues that the State Board's final determination with respect to the issue of obsolescence is incorrect. For an assessor to properly analyze obsolescence, a two-step inquiry is required. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d at 1238. First, the assessor must identify the causes of obsolescence, and second, the assessor must quantify the amount of obsolescence to be applied. *See id.* With respect to the first part of the *Clark* obsolescence test, the State Board hearing officer, in his review of the property, did not discover any causes of obsolescence. In addition, White Swan presented no evidence tending to prove a cause of obsolescence. The State Board therefore determined that the property did not experience obsolescence. The State Board then adopted the hearing officer's findings. In its final determinations, the State Board stated:

A review of this property and the evidence determined it has had a history of little or

---

10. As Indiana's property tax expert, the State Board should be able to explain in a final determination how these types of special problems (i.e., the assessment of two connected buildings) were resolved when it reviews an assessment. *Cf. Thorntown Tel. Co. v. State Bd. of Tax Comm'rs*, 629 N.E.2d 962, 966 (Ind. Tax Ct.1994) (because obsolescence calculations are complex State Board must give an "authoritative explanation" in its written findings). This was not done in this case.

11. Recently, a similar regulation governing grade has been declared unconstitutional for this reason. *See Whitley Prods., Inc.*, 704 N.E.2d at 1121 (citing *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1039 & n. 7 (Ind. 1998), *aff'g in part, rev'g in part*, 690 N.E.2d 370, 386 (Ind. Tax Ct.1997)).

[no] vacancy and is in a good business location without excessive competition[,] [p]etitioner failed to present any substantial evidence to show an obsolescence adjustment is warranted. Without other evidence[,] obsolescence depreciation is not supported.

No change was made.

(Joint Ex. C–1).

White Swan's failure to present or identify any evidence concerning obsolescence at the administrative hearing is fatal to its contention that the State Board erred in finding no causes of obsolescence. In *Lake County Trust Co. v. State Board of Tax Commissioners,* 694 N.E.2d 1253, 1258 (Ind. Tax Ct.1998), *review denied,* this Court held that when challenging the State Board's determination denying an obsolescence adjustment, the taxpayer has to offer evidence tending to prove causes of obsolescence. In this case, White Swan failed to do so. There is no evidence in the record showing that the property suffers from any cause of obsolescence. "Where there is no cause of obsolescence, there is no obsolescence to quantify." *Id.* at 1257. As a result, the State Board's final determinations must be affirmed.

### IV. Condition

■ White Swan contends that the State Board's findings regarding condition are also erroneous. Condition is an element of depreciation which measures the remaining usefulness of a structure based on its age. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.* r. 2.2–10–7(b) (1996)). Condition is measured by the amount of physical deterioration and the degree of maintenance relative to the age of the structure. *See id.; see also Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 386 (Ind. Tax Ct.1997), *aff'd in*

*part and rev'd in part,* 702 N.E.2d 1034 (Ind.1998). An assessor can determine from the regulation's life expectancy (depreciation) tables the effect of the improvement's condition and age on its true tax value. *See Barth, Inc.,* 699 N.E.2d at 808 (citing IND. ADMIN. CODE tit. 50, r. 2.1–5–1). Using these tables, the assessor will then convert his findings into a percentage factor for physical depreciation. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 . Once the percentage factor is applied, the true tax value can be determined. *See id.*

White Swan contends that reversal of the State Board's final determinations with respect to the condition of the subject improvements is warranted because the regulations governing condition lack ascertainable standards. Recently, this Court addressed the same issue. In *Phelps Dodge,* this Court held that a taxpayer may not secure a reversal of a State Board final determination of the condition of a given improvement simply by pointing out the inadequacy of the regulations governing condition. *See Phelps Dodge,* 705 N.E.2d at 1104. Rather, the taxpayer must offer probative evidence concerning the condition of that improvement.[12] *See id.* In this case, White Swan has offered no evidence relating to the condition of the subject improvement. Therefore, the Court will not reverse the State Board's final determination on this issue.

### V. Land Classification and Negative Influence Factor

The BOR initially classified all of the land on Parcel 49 as primary. Along with the primary land classification, the BOR awarded the parcel a forty-percent negative influence factor because the parcel was oversized.[13] White Swan appealed the land classification

---

**12.** Although the regulations governing condition have flaws, they do not, however, limit what evidence a taxpayer may offer on that issue. In fact, taxpayers may offer any evidence that "bears on the amount of physical deterioration suffered by a particular improvement." *Phelps Dodge,* 705 N.E.2d at 1104 n. 9 (citing *Lake County Trust Co.,* 694 N.E.2d at 1257). Rather, the problem is how the factual observations of how a given improvement has deteriorated get translated into a "level of condition." *See id.* at 1104. Therefore, a taxpayer who presents no

probative evidence with respect to the condition of a given improvement cannot complain that the regulation governing condition was flawed because the flaws in the regulation do not prejudice the taxpayer's ability to offer probative evidence.

**13.** Apparently, White Swan had no problem with the 40% negative influence factor that was determined by the BOR, as it was not included in any of White Swan's arguments to this court, nor was presented as an issue to the State Board.

arguing that all of Parcel 49 should not be classified as primary. The State Board subsequently reclassified the land into three segments; primary, secondary, and undeveloped. Also, after reclassification of the land, the State Board reduced the negative influence factor from forty-percent to fifteen-percent. Accordingly, this Court must evaluate the State Board's classification of the land as well as its decision to lower the negative influence factor. This Court will evaluate the land classification issue first and then turn to a discussion of the negative influence factor applied upon reclassification of the land.

### A. Land Classification

The regulations include a set of instructions that serve as a guide to assessors in the classification of land. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–2 (1992) (codified in present form at *id.* r. 2.2–4–17 (1996)); *see also State Bd. of Tax Comm'rs v. Two Market Square Associates L.P.*, 679 N.E.2d 882, 884 (Ind. 1997). Under the regulations adopted by the State Board, land can be classified as primary, secondary, or undeveloped. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–2(f) (1992) (codified in present form at *id.* r. 2.2–4–17 (1996)). A land parcel's base value depends on the classification it receives. Land parcels are not restricted to one classification, i.e., the particular parcel may have parts that are primary, secondary, or undeveloped. To illustrate, the BOR originally classified all land as primary, assigning a base value of $2.75 per square foot. In its final determination, the State Board reclassified parts of the parcel as secondary and undeveloped. Thus part of the parcel was assigned a base value of $1.23 per square foot as secondary, and another assigned a value of $.53 as undeveloped. A separate part of the land remained classified as primary [14] (Resp't Br. at 9).

■ White Swan failed to sufficiently place land classification at issue by failing to provide probative evidence relating to this issue. *See Whitley Prods.*, 704 N.E.2d at 1119–20 (where taxpayer fails to present probative evidence regarding an issue, the substantial evidence standard is not triggered). White Swan raises the issue of land classification, but does not provide the Court with a cogent argument regarding the actual reclassification of the land.[15] Instead, White Swan's argument is directed at the State Board's decision to lower the negative influence factor as a result of the reclassification. As a result, the Court will affirm the State Board's reclassification of Parcel 49.

### B. Negative Influence Factor

The value of a particular parcel of land is determined by the Land Order, the classification of the land, and, if applicable, an influence factor. Land Orders are developed from the collection and analysis of comparable sales data for the neighborhood and surrounding areas where the parcel of land is situated. *See* IND.CODE ANN. § 6–1.1–4–13.6 (1989) (amended 1993 & 1997); *see also* IND. ADMIN. CODE tit. 50, r. 2.1–2.1 (1992) (codified in present form at *id.* r. 2.2–4–17(c)(8) (1996)); *see also* IND. ADMIN. CODE tit. 50, r. 2.1–4–2(f). The sales data is studied by the County Land Valuation Commission, which recommends a range of values for the property in a neighborhood. *See Phelps Dodge*, 705 N.E.2d at 1105. The State Board then sets the final range of values in a Land Order. This range of values is used by the assessor in assigning an extended value to each parcel based on the Land Order. *See id. See also Precedent v. State Bd. of Tax Comm'rs*, 659 N.E.2d 701, 706 (Ind. Tax Ct.1995).

■ The term "influence factor" refers to a condition peculiar to a parcel of land (e.g., size or shape) that prescribes either a positive or negative adjustment to the extended value of the land to account for variations from the norm. *See* IND. ADMIN. CODE tit. 50, r. 2.1–2–1; *see also Phelps Dodge*, 705

---

**14.** The State Board stated in its brief that White Swan contended that all of its land should not be classified as primary. (Resp't Br. at 8). As a result of this contention, the State Board reclassified a "substantial part" of the land to secondary or undeveloped land. (Resp't Br. at 8–9).

**15.** This leads the Court to believe that White Swan's true complaint is with the State Board's decision to lower the negative influence factor *as a result of the reclassification* as opposed to the actual reclassification of the land itself.

N.E.2d at 1105; *see also Talesnick v. State Bd. of Tax Comm'rs*, 693 N.E.2d 657, 660 (Ind. Tax Ct.1998). Influence factors are used to take into account positive and negative attributes of a particular property in arriving at the value of a particular parcel. In order to properly quantify an influence factor, the assessor must first identify deviations from the norm and then quantify the variation. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–2. The variation is then expressed as a percentage. The percentage represents the composite effect of the factors that influence the value. *Id.*

In the case at bar, the land in question initially had a forty-percent influence factor applied to it because the parcel was considered oversized. After reclassification of the land, however, the State Board contends that a reduction of the influence factor from forty-percent to fifteen-percent was required. (Joint Ex. C–2). Thus, it appears that the State Board treated land classification and negative influence factor as interdependent. The State Board was incorrect. In fact, land classification and influence factors are independent of each other. The regulations do not require a change in one factor because there was a change in the other. As a result, the State Board, if it decides to lower a negative influence factor because of land reclassification [16], must demonstrate in its final determination how a change in one affects the other.[17]

The State Board's errors are highlighted further by the testimony of the hearing officer. At trial, the hearing officer admitted that he did not know the basis behind the fifteen-percent negative influence factor application, or, for that matter, the basis of the initial forty-percent application. (Trial Tr. at 14). The hearing officer also admitted that it is possible that the fifteen-percent negative influence factor applied does not accurately account for the effect of the size of the property on its per square foot or per acre value. (Trial Tr. at 14). Thus, because the State Board altered the negative influence factor without *articulating reasons* for the reduction in its final determination, this Court finds that the State Board's final determinations lacked substantial evidentiary support. *See Phelps Dodge*, 705 N.E.2d at 1106 (citing *Talesnick*, 693 N.E.2d at 661; *Western Select Properties*, 639 N.E.2d at 1073; *Canal Square Ltd. Partnership v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801, 810 (Ind. Tax Ct.1998) (State Board's reasoning for its decision must be contained in its written findings.)). Accordingly, the Court reverses and remands the final determination of the State Board.

On remand, White Swan will be required to present probative evidence that supports what it believes to be the proper amount of negative influence factor to be applied. *See Phelps Dodge*, 705 N.E.2d at 1106. The State Board, of course, must then deal with the evidence in a meaningful manner. *See Loveless Const. Co.*, 695 N.E.2d at 1049.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the State Board's final determinations with respect to issues II, III, IV and V–A. The Court REVERSES and REMANDS issues I and V–B, to the State Board for further consideration consistent with this opinion.

---

**16.** A change in land classification from primary to secondary does not necessarily mean that a lower influence factor is in order. Conversely, a change from secondary to primary does not necessarily mean that a higher influence factor is in order.

**17.** Assuming arguendo that it was proper to reduce the negative influence factor, the State Board still failed to explain how the fifteen-percent factor, as opposed to any other figure, was the correct negative influence factor. *See Clark*, 694 N.E.2d 1230, 1240 (Ind. Tax Ct.1998); *see also Loveless Const. Co. v. State Bd. of Tax Comm'rs*, 695 N.E.2d 1045, 1048 (Ind. Tax Ct.1998), *review denied.*